UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
RAYMOND STUKES,

                Plaintiff,

           - against -

THE CITY OF NEW YORK; CHARLES V.
CAMPISI, as Bureau Chief, Internal Affairs
Bureau; GARY STREBEL, as Assistant Chief,
Internal Affairs Bureau; RICHARD MILLER, as
Deputy Inspector, Internal Affairs Bureau;
EDWARD R. ARMSTRONG, as Deputy
Inspector, Internal Affairs Bureau; SEAN
DONOVAN, as Lieutenant, Internal Affairs
Bureau; ANTONIO TORRES, as Sergeant,
Internal Affairs Bureau; and TANESHA S.
FACEY, as Police Officer, 81st Precinct, each
being sued individually in their official capacities
as employees of defendant THE CITY OF NEW
YORK,

                Defendants.
--------------------------------------------------------------X

**MEMORANDUM & ORDER**

**13-CV-6166 (NGG) (VVP)**

NICHOLAS G. GARAUFIS, United States District Judge:

      Plaintiff Raymond Stukes brings this 42 U.S.C. § 1983 action against Defendants Charles

V. Campisi, former Bureau Chief of the Internal Affairs Bureau ("IAB"); IAB Assistant Chief

Gary Strebel; former IAB Deputy Inspector Richard Miller; IAB Deputy Inspector Edward R.

Armstrong; IAB Lieutenant Sean Donovan; IAB Sergeant Antonio Torres; and Police Officer

Tanesha S. Facey (collectively, the "Individual Defendants"); and the City of New York (the

"City"). (See Second Am. Compl. ("SAC") (Dkt. 19); Reply Mem. of Law in Further Supp. of

Defs.' Mot. to Dismiss the SAC ("Defs.' Reply") (Dkt. 30) at 1.) The Individual Defendants are

sued in their individual and official capacities. (SAC ¶ 7; see also Mem. of Law in Supp. of

1

Defs.' Mot. to Dismiss the SAC ("Defs.' Mem.") (Dkt. 27) at 22-24; Defs.' Reply at 9; Pl.'s Mem. of Law in Opp'n to Defs.' Mot. to Dismiss Compl. ("Pl.'s Opp'n") at 27-28.)[1] Presently before the court is Defendants' motion to dismiss the SAC in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). (Not. of Mot. to Dismiss the SAC (Dkt. 26).) For the reasons discussed below, Defendants' motion is GRANTED.

## I.  BACKGROUND

### A.  Factual Allegations

The following facts are taken from Plaintiff's SAC, and are assumed as true for purposes of this motion.

Plaintiff is a sergeant with the New York City Police Department ("NYPD"), and was assigned in that capacity to the 81st Precinct in Brooklyn, New York. (SAC ¶¶ 8-9.) On September 3, 2009, Plaintiff was performing routine patrol, in a marked police vehicle, and he observed Individual Defendant Facey—a fellow police officer who had been Plaintiff's subordinate from June 2008 through August 2009—interacting with an African-American male. (Id. ¶¶ 10, 27, 37.) Unbeknownst to Plaintiff or Facey, the African-American male was an undercover IAB officer, known as "UC-5015." (Id. ¶ 44.) UC-5015 and members of the IAB—specifically, Individual Defendants in this case—were in the process of executing a Targeted Integrity Test, with Facey as the target. (Id. ¶¶ 28, 35.) Facey was targeted because she was accused of making false arrests and issuing questionable summonses. (Id. ¶ 33.)

Accompanied by two police officers (former Officer Hector Tirado and Officer Warren Barnes), Plaintiff stopped to see if Facey needed assistance. (Id. ¶¶ 38-39.) Facey told Plaintiff

---

[1]  It appears that Plaintiff omitted the word "and" between the clauses "individually" and "in their official

that she had seen UC-5015 selling untaxed cigarettes. (Id. ¶ 40.) At some point, UC-5015 directly asked Facey if she had in fact seen him selling untaxed cigarettes, and she answered, "Yes I did." (Id. ¶ 44.) Unknown to Plaintiff, Facey had not seen UC-5015 selling untaxed cigarettes; she was lying. (Id. ¶ 43.) After a brief conversation with Facey, and based upon Facey's representations, Tirado arrested UC-5015. (Id. ¶ 41.) Plaintiff "verified" the arrest. (Id. ¶ 42.) Plaintiff, Tirado, and Barnes then transported UC-5015 to the 81st Precinct for arrest processing. (Id. ¶ 46.) However, Plaintiff did not supervise the arrest processing inside the 81st Precinct; by that time, he was off duty and no longer supervising Tirado. (Id. ¶¶ 57-58.)

The Targeted Integrity Test, including the false statements made by Facey, was recorded on audio and video tape. (Id. ¶¶ 36, 45.) The audio and video tapes were provided to Kings County Assistant District Attorney ("A.D.A.") Gregory A. Marshall on or about September 29, 2009. (Id. ¶ 61.) On an unspecified date, Individual Defendant Donovan "recommended to" Individual Defendant Miller that Plaintiff and Tirado be prosecuted for perjury. (Id. ¶ 52.) Subsequently, on October 27, 2009, Miller provided the audio and video tapes again to A.D.A. Marshall, and Marshall and Miller "reviewed them together." (Id. ¶ 63.) On December 4, 2009, Plaintiff was placed on "Modified Assignment." (Id. ¶ 64.)

In July 2010, A.D.A. Marshall presented evidence to a grand jury, and the grand jury returned an indictment against Plaintiff for offering a false instrument for filing in the first and second degrees, perjury in the second and third degrees, falsifying business records in the second degree, and official misconduct in the first degree. (Id. ¶¶ 72-73, 76, 83.) Plaintiff alleges, in a conclusory manner, that A.D.A. Marshall presented "false-facts provided by" Defendants

---

capacities" in his case caption. (Compare SAC, caption, with id. ¶ 7.)

Campisi, Strebel, Miller, Torres, Facey, and the City to the grand jury, and that the same Defendants failed to turn over "'exculpatory evidence' in their possession to the Kings County District Attorney's Office for presentation to the grand jury." (Id. ¶¶ 72, 74.)

Plaintiff is represented by counsel, and therefore the court need not go out of its way to liberally construe the SAC, as it would do if dealing with a pleading drafted by a pro se plaintiff. However, if the court were inclined to engage in such a construction, it would appear that the "false-facts" Plaintiff refers to may be a document or documents that were purported to have been signed by Plaintiff and that the A.D.A. presented to the grand jury. (See id. ¶¶ 96, 100-102.) According to Defendants, these documents constitute the paperwork surrounding UC-5015's arrest, and "Plaintiff is in essence claiming that the signature on the arrest paperwork was not his and, as a result, the documents presented to the Grand Jury were not 'valid' or 'authentic.'" (Defs.' Mem. at 4 (quoting SAC ¶¶ 96, 98).) Presumably, this arrest paperwork, setting forth the (false) basis for UC-5015's arrest, constituted the falsified instrument, falsified business records, perjury, and official misconduct with which Plaintiff was charged.

It is also fairly unclear from the SAC what "exculpatory evidence" Plaintiff alleges was withheld from the District Attorney's ("D.A.") Office. It appears that Plaintiff may be referring to "document[ion] in the Command Log, Roll Call, Telephone Message [L]og, Prisoner Log, and other related department records" that would have indicated that Plaintiff was "off-duty and not supervising former Police Officer Hector Tirado" at the time of UC-5015's arrest processing—and therefore, that Plaintiff could not have signed the arrest paperwork. (SAC ¶¶ 58-59.) The SAC does not allege that any of the Individual Defendants were in fact aware of Plaintiff's off-duty status or had viewed any of this documentation.

4

On or about July 27, 2010, Plaintiff learned that he had been indicted and would be arrested by the IAB. (Id. ¶ 77.) On approximately July 30, 2010, Individual Defendant Campisi ordered that Plaintiff be arrested. (Id. ¶ 81.) Plaintiff was then arrested, at the D.A.'s Office, and he was criminally charged with offering a false instrument for filing in the first and second degrees, perjury in the second and third degrees, falsifying business records in the second degree, and official misconduct in the first degree. (Id. ¶ 83.) Individual Defendants Armstrong and Donovan processed the arrest. (Id. ¶ 84.) Upon his arrest, Plaintiff was also suspended from the NYPD without pay. (See id. ¶¶ 81-82.)

On approximately August 31, 2010, Plaintiff was "restored from suspension," placed on "Modified Assignment," and reassigned. (Id. ¶ 89.) Approximately one month later, Defendant Armstrong requested that NYPD disciplinary charges, called "Charges and Specifications," be brought against Plaintiff. (Id. ¶ 90; see also id. ¶ 147.) Disciplinary charges mirroring his criminal charges were in fact brought against Plaintiff. (Id. ¶ 93.)

On or about November 10, 2010, Plaintiff appeared in state court in connection with his criminal case, and he informed the court that the documents provided to the D.A.'s Office by Defendants Campisi, Strebel, Miller, Torres, Facey, and the City "were not signed by him." (Id. ¶ 96.) Plaintiff hired a handwriting expert, who provided an expert report opining that Plaintiff did not sign the documents that had been presented to the grand jury. (Id. ¶¶ 100-102.) Plaintiff provided the expert report to the D.A.'s Office; he also produced "up to ten . . . years of personal records such as mortgages and bank statements" for the D.A.'s Office to review. (Id. ¶¶ 103, 107.) On or about November 14, 2011, D.A. Charles J. Hynes stated that his office knew that Plaintiff had not signed the paperwork. (Id. ¶ 110.) On approximately November 15, 2011,

5

A.D.A. Andrea Robinson moved to dismiss Plaintiff's criminal case for "lack of evidence." (Id. ¶ 111.) On or about December 7, 2011, after the dismissal of the charges, Plaintiff filed a motion for restoration to "Full Duty" with the NYPD Police Commissioner; he was eventually restored to "Full Duty" on approximately June 9, 2013.[2] (Id. ¶¶ 114, 136.)

On or about March 1, 2013, the original disciplinary charges were also dismissed against Plaintiff, and he was served with an amended charge, for "failing to follow the turnover arrest procedure." (Id. ¶ 119.) A Department Trial was held regarding the amended disciplinary charge between July 25, 2013, and August 9, 2013. (Id. ¶¶ 137-139.) During the Department Trial, Individual Defendant Torres and UC-5015 admitted that Individual Defendant Facey had falsely stated that she saw UC-5015 selling cigarettes during the Targeted Integrity Test. (Id. ¶¶ 140-141.)[3] On or about January 15, 2014, the NYPD Trial Commissioner's Office recommended finding that Plaintiff was not guilty of the disciplinary charge, and the Police Commissioner adopted the recommendation on approximately April 7, 2014.[4] (Id. ¶¶ 148-149.) Indeed, Plaintiff alleges that because Defendant Facey never arrested UC-5015 (rather, former Police Officer Tirado performed the arrest, see id. ¶ 41), a turnover arrest could not have occurred. (Id. ¶¶ 126-127.)

---

[2] Plaintiff alleges that on approximately October 11, 2011, Individual Defendant Armstrong ordered an IAB administrative search of Plaintiff's NYPD locker(s), and no violations of Department policy were found. (Id. ¶¶ 107-109.)

[3] Plaintiff also contends that Facey lied while testifying at Plaintiff's Department Trial, although he does not specify on what topic she allegedly provided such false testimony. (Id. ¶ 144.)

[4] Plaintiff attached an unlabeled document as an exhibit to his Opposition. The document appears to be the Trial Commissioner's Office's recommendation and the Commissioner's adoption thereof. (See Pl.'s Opp'n at ECF pages 30-47.) Plaintiff's Opposition does not cite or refer to this document in support of any argument. The court has reviewed the exhibit. Notably, even if the exhibit were considered on this motion as a document integral to the SAC, and relied upon by the SAC, see Global Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 156 (2d Cir. 2006), nothing therein changes the court's analysis in this Memorandum and Order.

On or about August 23, 2013—after the conclusion of the Department Trial, and prior to the Trial Commissioner's Office recommendation that he be found not guilty—Plaintiff "complained about his distrust of the Department, therefore, he was placed on 'Restricted Duty,' transferred to non-enforcement duties and his firearm was seized." (Id. ¶ 145.)

Scattered throughout the SAC are a number of allegations regarding a civil lawsuit filed in the Southern District of New York, Adrian Schoolcraft v. City of New York, et al., No. 10-CV-6005 (S.D.N.Y.). Essentially, Plaintiff contends that Police Officer Adrian Schoolcraft, who was Plaintiff's subordinate from April 2008 through June 2009, "amassed tape recordings, department records, etc. to document serious corruption such as ticket quotas, downgrading criminal complaint reports, illegal personal searches within the 81st Precinct" (id. ¶¶ 12-13); and Defendants Donovan and the City, as well as other NYPD management personnel, were upset with Plaintiff because Plaintiff refused to "downgrade" Schoolcraft's "Yearly Performance Evaluation" as part of an NYPD effort to damage Schoolcraft's credibility and protect the NYPD from Schoolcraft's lawsuit. (See id. ¶¶ 14-26.) The SAC suggests that Plaintiff's "refus[al] to go along with trying to damage . . . Schoolcraft's reputation" provided a motivation for Individual Defendant Donovan to "recommend[] with malicious intent" that Plaintiff be prosecuted for perjury. (See id. ¶¶ 52-55.)[5]

Plaintiff asserts § 1983 claims of malicious prosecution, false arrest, abuse of authority, and municipal liability. (See id. ¶¶ 151-155 (Count I (Abuse of Authority)), 156-161 (Count II

_____

[5] Plaintiff's SAC also references two "Worksheets" that were allegedly prepared and signed by UC-5015 and Individual Defendant Donovan regarding the Targeted Integrity Test. (See id. ¶¶ 47-51 (discussing Worksheet Nos. 18 and 20).) The SAC does not, however, evince the relevance of these worksheets to Plaintiff's claims; it does not explain what content they contain (this is particularly true with respect to Worksheet No. 20), or how they were used in connection with Plaintiff's indictment, arrest, and prosecution. Plaintiff's brief in opposition to this

(False Arrest)), 162-167 (Count III (Malicious Prosecution)), 168-188 (Counts IV-VII (Monell Claim, Failure to Train, Failure to Supervise, and Improper Discipline)).) He seeks equitable relief as well as compensatory and punitive damages in an unspecified amount. (Id. at 1, 24.)

## B. Procedural History

Plaintiff commenced this action on November 7, 2013. (Compl. (Dkt. 1).) On December 5, 2013, he filed an Amended Complaint (Dkt. 3). After a pre-motion conference held April 28, 2014, regarding Defendants' anticipated motion to dismiss the Amended Complaint (see Apr. 28, 2014, Min. Entry), Plaintiff filed the SAC, which Defendants have now moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II. LEGAL STANDARD

The purpose of a motion to dismiss for failure to state a claim under Rule 12(b)(6) is to test the legal sufficiency of a plaintiff's claims for relief. Patane v. Clark, 508 F.3d 106, 112 (2d Cir. 2007). In reviewing a complaint, the court must accept as true all allegations of fact, and draw all reasonable inferences from these allegations in favor of the plaintiff. ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

A complaint will survive a motion to dismiss if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Plausibility "is not akin to a 'probability requirement,'" but requires "more than a sheer possibility that a defendant has acted unlawfully." Id. at 678 (quoting Twombly, 550 U.S. at 556). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

---

motion does not shed any additional light on the matter.

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "[M]ere 'labels and conclusions' or 'formulaic recitation[s] of the elements of a cause of action will not do'; rather, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010) (emphasis in original) (quoting Twombly, 550 U.S. at 555).

## III.   DISCUSSION

### A.   Malicious Prosecution

In Count III of the SAC, Plaintiff asserts a malicious prosecution claim in violation of the Fourth Amendment and § 1983. (SAC ¶¶ 162-167.) A claim for malicious prosecution pursuant to § 1983 is "substantially the same" as a claim for malicious prosecution under state law. Jocks v. Tavernier, 316 F.3d 128, 134 (2d Cir. 2003) (internal quotation marks and citation omitted). To state a claim for malicious prosecution, a plaintiff must plausibly plead: "(1) the initiation or continuation of a criminal proceeding against plaintiff;[6] (2) termination of the criminal proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." Id. at 136 (internal quotation marks and citation omitted); see Colon v. City of New York, 60 N.Y.2d 78, 82 (1983). Defendants do not dispute that the criminal proceeding was terminated in Plaintiff's favor, but they contend that Plaintiff fails to adequately allege the other required elements. As discussed below, the court concludes that Plaintiff fails to adequately allege either lack of probable cause or initiation of the

---

[6] The only proceeding that can serve as the basis for Plaintiff's malicious prosecution claim is the criminal proceeding instituted against him by the Kings County District Attorney's Office in New York state court. The disciplinary charges and NYPD Department Trial that Plaintiff repeatedly references in his SAC cannot serve as the basis for such a claim. See Washington v. Cnty. of Rockland, 373 F.3d 310, 315-17 (2d Cir. 2004) (holding that a § 1983 claim of malicious prosecution may not be premised on administrative disciplinary proceedings brought by

9

proceeding with respect to all Individual Defendants, and fails to adequately allege actual malice with respect to all Defendants except for Individual Defendant Donovan. Accordingly, Plaintiff's claim for malicious prosecution is DISMISSED.

      1.    Lack of Probable Cause

          *a.*    *Failure to State a Claim*

Probable cause, in the context of a malicious prosecution claim, "consists of such facts and circumstances as would lead a reasonably prudent person in like circumstances to believe plaintiff guilty." Colon, 60 N.Y.2d at 82; see Boyd v. City of New York, 336 F.3d 72, 76 (2d Cir. 2003). "[T]he existence of probable cause is a complete defense to a claim of malicious prosecution in New York." Savino v. City of New York, 331 F.3d 63, 72 (2d Cir. 2003). An indictment by a grand jury creates a presumption that a prosecution was supported by probable cause. Id.; Colon, 60 N.Y.2d at 82. In order to rebut that presumption, a plaintiff must establish that the indictment was obtained by fraud, perjury, the suppression of evidence, or other police conduct undertaken in bad faith. Colon, 60 N.Y.2d at 82; Manganiello v. City of New York, 612 F.3d 149, 162 (2d Cir. 2010); Boyd, 336 F.3d at 76; Savino, 331 F.3d at 72 ("The District Court also correctly recognized that, under New York law, indictment by a grand jury creates a presumption of probable cause that may only be rebutted by evidence that the indictment was procured by 'fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.'" (emphasis in original) (citation omitted)).

While "a police officer's fabrication and forwarding to prosecutors of known false evidence works an unacceptable corruption of the truth-seeking function of the trial process,"

---

sheriff's department against correction officers). Plaintiff does not appear to contend otherwise. (See Pl.'s Opp'n

Manganiello, 612 F.3d at 162 (internal quotation marks and citations omitted), "[t]he simple act of not disclosing to the grand jury all evidence that could potentially benefit the accused at a grand jury hearing does not necessarily rise to the level of bad faith." Parisi v. Suffolk Cnty., No. 04-CV-2187 (ENV) (ETB), 2009 WL 4405488, at *10 (E.D.N.Y. Nov. 30, 2009). "[T]he police and prosecutors cannot be said to have improperly concealed evidence every time the plaintiff is able to show that they could have done more or could have disclosed more. What is required is proof that the police conduct deviated egregiously from statutory requirements or accepted practices applicable in criminal cases." Id. (quoting Gisondi v. Town of Harrison, 72 N.Y.2d 280, 285 (1998)) (internal quotation marks and additional citation omitted). Courts have held that police officers act in bad faith only when they fail to disclose evidence that would "conclusively" establish the plaintiff's innocence, see Gisondi, 72 N.Y.2d at 286, or "'negate the possibility' that plaintiff had committed the crime," see Bonds v. City of New York, No. 12-CV-1772 (ARR) (MDG), 2014 WL 2440542, at *8 (E.D.N.Y. May 30, 2014) (quoting Williams v. City of New York, No. 02-CV-3693 (CBM), 2003 WL 22434151, at *7 (S.D.N.Y. Oct. 23, 2003), aff'd, 120 F. App'x 388 (2d Cir. 2005)).

Plaintiff's malicious prosecution claim fails because Plaintiff has not pleaded facts to plausibly suggest that his grand jury indictment was procured by fraud, perjury, the suppression of evidence, or other bad faith police conduct. See Savino, 331 F.3d at 73. Although Plaintiff attempts to rebut the presumption of probable cause by alleging that the A.D.A. presented "false-facts" to the grand jury, and that Defendants failed to turn over "'exculpatory evidence . . . for presentation to the grand jury" (SAC ¶¶ 72, 74), these conclusory statements fail to overcome the

at 21-24 (raising no argument regarding administrative proceedings with respect to malicious prosecution claim).)

presumption of probable cause. See Twombly, 550 U.S. at 555 (plausibility pleading "requires more than labels and conclusions").

As discussed above, if the court were inclined to search for allegations of fact buried in the SAC, it might infer that Plaintiff is arguing that the UC-5015 arrest paperwork, which purported to contain Plaintiff's signature, was "false" evidence because it was not in fact signed by Plaintiff. However, Plaintiff has not alleged that any of the Individual Defendants actually knew that what appeared to be Plaintiff's signature on these documents was a forgery. The fact that the signature turned out to be a falsity does not establish, or even permit the reasonable inference, that any of the Defendants in this case provided those documents to the D.A.'s Office despite their knowledge that the signature was a fake. See Manganiello, 612 F.3d at 162 (holding that the presumption created by an indictment would be rebutted by a "police officer's fabrication and forwarding to prosecutors of known false evidence" (emphasis added)). Without allegations of such knowledge, Plaintiff cannot invoke the arrest paperwork to argue that his indictment was procured by bad faith police conduct.

Defendants construe the SAC to also allege that testimony presented to the grand jury was perjurious, and they argue that any attempt by Plaintiff to rebut the presumption of probable cause created by the indictment by allegations of such perjury is foreclosed by Rehberg v. Paulk, 132 S. Ct. 1497 (2012). (See Defs.' Mem. at 9.) The court does not find it at all clear that the SAC contains an allegation that any Individual Defendants testified before the grand jury and committed perjury; however, Defendants are correct that to the extent Plaintiff has attempted to set forth such an allegation, Plaintiff may not use that contention to rebut the presumption of probable cause in a § 1983 malicious prosecution claim brought against them. See Rehberg, 132

12

S. Ct. 1497 (holding that police officers who testify before a grand jury are shielded by absolute immunity in a subsequent § 1983 action premised on that testimony, and that this rule "may not be circumvented by . . . using evidence of the witness[es]' testimony to support any other § 1983 claim concerning the initiation or maintenance of a prosecution").

With respect to Plaintiff's allegations regarding the withholding of "exculpatory evidence," the court infers that Plaintiff is alleging that "document[ion] in the Command Log, Roll Call, Telephone Message [L]og, Prisoner Log, and other related department records" would have indicated that Plaintiff was "off-duty and not supervising former Police Officer Hector Tirado" at the time of UC-5015's arrest processing (and therefore, that Plaintiff could not have signed the arrest paperwork) (SAC ¶¶ 58-59), and was not provided to the D.A.'s Office. However, Plaintiff has not pleaded that any of the Individual Defendants actually knew that he was off duty at the time, and/or that they thought to look for such documentation, but intentionally, or even recklessly, chose not to do so. At most, the SAC raises an inference that Defendants may have been negligent in failing to consult department records to determine whether Plaintiff was on duty at the time of the arrest processing.[7]

But negligence is insufficient. The New York Court of Appeals has held that police officers' "failure to pursue [additional avenues of] investigation is not the equivalent of fraud or the suppression of evidence." Colon, 60 N.Y.2d at 83. Therefore, possible negligence in failing to discover or forward exculpatory evidence is insufficient to rebut the presumption created by

---

[7] Even this would be a stretch; it seems reasonable for Defendants to have assumed Plaintiff was on duty at the time of the arrest processing when he had been on duty and supervising Tirado immediately beforehand, and Plaintiff had transported UC-5015 to the precinct for processing. Moreover, Plaintiff has not explained why he could not have signed the arrest paperwork, even if he was officially off duty at the time. (See Pl.'s Opp'n at 22-24.)

the indictment. See Zahrey v. City of New York, No. 98-CV-4546 (DCP) (JCF), 2009 WL 54495, at *17 (S.D.N.Y. Jan. 7, 2009) ("Malicious prosecution cases from this circuit differentiate between circumstances where plaintiffs 'merely suggest[] that the police could have found more evidence to support their case or that a specific piece of evidence relied on by the police would not have survived closer scrutiny' and when a plaintiff 'offer[s] proof that defendants had evidence in their possession . . . that negated probable cause.'" (quoting Richards v. City of New York, No. 97-CV-7990 (MBM), 2003 WL 21036365, at *19 (S.D.N.Y. May 7, 2003))), amended in part on reconsideration, 2009 WL 1024261, at *9 (S.D.N.Y. Apr. 15, 2009); id. ("[M]ere negligence cannot sustain a cause of action for malicious prosecution . . . ." (citing Williams v. City of New York, No. 02-CV-3693 (CBM), 2003 WL 22434151 (S.D.N.Y. Oct. 23, 2003); Savino, 331 F.3d at 74)). Accordingly, Plaintiff has failed to allege a lack of probable cause.

### b.    *Collateral Estoppel*

Defendants also argue that any attempt by Plaintiff to rebut the presumption of probable cause by suggesting the indictment was improperly obtained is collaterally estopped by two state court decisions that were issued during his criminal prosecution.[8] (See Decl. of Asst. Corp. Counsel Sarah B. Evans in Supp. of Defs.' Mot. to Dismiss the SAC ("Evans Decl."), Ex. A (Dkt. 28-1, Ex. A) (Mar. 10, 2011, Decision and Order by J.S.C. John P. Walsh, New York State Supreme Court, Kings County, Criminal Term Part 50, Indictment No. 4269/2010 ("Mar. 10, 2011, Criminal Term Decision")); Evans Decl., Ex. B (Dkt. 28-1, Ex. B) (Oct. 15, 2010,

---

[8] A district court may dismiss a § 1983 claim on a motion to dismiss on collateral estoppel grounds. See Allen v. McCurry, 449 U.S. 90, 103-05 (1980); Swiatowski v. Citibank, 745 F. Supp. 2d 150, 168 (E.D.N.Y. 2010).

14

Decision and Order by J.S.C. John P. Walsh, New York State Supreme Court, Kings County, Criminal Term Part 50, Indictment No. 4269/2010 ("Oct. 15, 2010, Criminal Term Decision")).)[9]

"Under New York law, collateral estoppel bars relitigation of an issue when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action."[10] In re Hyman, 502 F.3d 61, 65 (2d Cir. 2007) (citing Kaufman v. Eli Lilly & Co., 65 N.Y.2d 449, 455-56 (1985)). "The party seeking the benefit of collateral estoppel bears the burden of proving the identity of the issues, while the party challenging its application bears the burden of showing that he or she did not have a full and fair opportunity to adjudicate the claims involving those issues." Khandhar v. Elfenbein, 943 F.2d 244, 247 (2d Cir. 1991) (citing Kaufman, 65 N.Y.2d at 456). "If the issue has not been litigated, there is no identity of issues between the present action and the prior determination. An

---

[9] A court may consider extrinsic materials on a motion to dismiss if they are "integral to the complaint" or appropriate subjects for judicial notice. See Global Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 156 (2d Cir. 2006). Defendants suggest that the two state court decisions, which they submitted in support of their motion, are integral to the complaint. (See Evans Decl. ¶¶ 2-3.) Materials are considered integral to a complaint when "the 'plaintiff rel[ied] on the terms and effect of [the] document in drafting the complaint . . . ; mere notice or possession is not enough.'" Global Network, 458 F.3d at 156 (alterations in original) (quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002)). Although Plaintiff does refer to these decisions in the SAC (see SAC ¶ 97), this court is hesitant to find that Plaintiff "relied on the terms and effect" of those decisions in drafting his pleading, and it need not do so in order to consider Defendants' collateral estoppel argument. Indeed, the state court decisions are indisputably public records of which the court is entitled to take judicial notice. See, e.g., Hayes v. Perotta, 751 F. Supp. 2d 597, 599 (S.D.N.Y. 2010) (noting that courts may take judicial notice of transcripts and judicial opinions from other court proceedings); Jacobs v. Law Offices of Leonard N. Flamm, No. 04-CV-7607 (DC), 2005 WL 1844642, at *3 (S.D.N.Y. July 29, 2005) (Chin, J.) ("In cases where some of those factual allegations [made in the complaint] have been decided otherwise in previous litigation, however, a court may take judicial notice of those proceedings and find that plaintiffs are estopped from re-alleging those facts.").

[10] New York law applies because Defendants "seek to invoke the preclusive effect of a New York state court judgment." Toliver v. City of New York, No. 10-CV-3165 (PAC) (JCF), 2012 WL 7782720, at *7 (S.D.N.Y. Dec. 10, 2012) (report and recommendation) (citing Johnson v. Watkins, 101 F.3d 792, 794 (2d Cir. 1996)), adopted, 2013 WL 1155293 (S.D.N.Y. Mar. 21, 2013); see Allen v. McCurry, 449 U.S. 90, 96 (1980) ("Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so . . . ." (citing 28 U.S.C. § 1738)).

issue is not actually litigated if, for example, there has been a default, a confession of liability, a failure to place a matter in issue by proper pleading or even because of a stipulation." Kaufman, 65 N.Y.2d at 456-57.

Upon review of the state criminal court opinions, the court finds that Plaintiff is collaterally estopped to the extent that he argues that the arrest paperwork constituted "false-facts" that were presented to the grand jury. First, after examining in camera the evidence placed before the grand jury, the state court held in its October 15, 2010, Criminal Term Decision that nothing "in the presentation impaired the integrity of the Grand Jury proceedings." (Oct. 15, 2010, Criminal Term Decision at 1, 4.) Second, the March 10, 2011, Criminal Term Decision, in which Justice Walsh denied Plaintiff's motion to dismiss the indictment, reveals that Plaintiff's counsel had attacked the sufficiency of the evidence that was put before the grand jury, and specifically addressed the arrest paperwork, arguing that no evidence connected Plaintiff to his purported signature. (See Mar. 10, 2011, Criminal Term Decision at 2-4.) That court noted that Plaintiff's counsel "characterized the basis of the indictment as a 'misguided and incorrect assumption that Stukes signed the police reports at issue in this case' while Stukes 'flatly denied' he signed the reports," and explained that the "denial [was] unnecessary and irrelevant in any evaluation of the sufficiency of the Grand Jury presentation." (Id. at 3.) The criminal court explained why the arrest paperwork, combined with additional evidence presented to the grand jury establishing Plaintiff's "presence at the arrest and his role in it through at least two witnesses," allowed the jury to reasonably draw the inference that Plaintiff had in fact signed the documents. (Id. at 3-4.) Plaintiff, who has the burden to show that he did not have a full and fair opportunity to adjudicate these issues, has failed to do so—indeed, he has failed to respond in

16

any way to Defendants' collateral estoppel arguments. (See Pl.'s Opp'n at 25.) Accordingly, to the extent that Plaintiff seeks to rebut the presumption of probable cause with his "false-facts" argument, he is estopped.

However, it is not evident that Plaintiff's present contention that the police officer Defendants withheld exculpatory evidence from the D.A.'s Office—and by extension, the grand jury—was litigated in the state court proceedings; therefore, Plaintiff is not estopped as to this issue. Nonetheless, as discussed above, Plaintiff's failure to plausibly plead that Defendants acted egregiously in suppressing evidence that would have conclusively established his innocence is fatal to his malicious prosecution claim.

> ### 2. Initiation

Personal involvement by a particular defendant in an alleged constitutional violation is a prerequisite to § 1983 liability as to that defendant. Iqbal, 556 U.S. at 677; Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995). Plaintiff alleges in a conclusory manner that Individual Defendants Campisi, Strebel, Miller, Armstrong, Donovan, and Torres "initiated and continued" his criminal proceeding. (SAC ¶ 164.) Of course, this conclusory statement is insufficient to allege that these Defendants were personally involved in the initiation (or continuation) of Plaintiff's criminal case. Plaintiff also alleges that Individual Defendant Donovan "recommended to" Individual Defendant Miller that Plaintiff be prosecuted for perjury, despite knowing that probable cause did not exist for such a prosecution; subsequently, Miller provided audio and video tapes of the Targeted Integrity Test to A.D.A. Marshall, and Marshall and Miller "reviewed them together." (Id. ¶¶ 52, 63.) Defendants argue that these allegations "are insufficient to establish that [they] initiated the criminal prosecution against" Plaintiff. (Defs.'

Mem. at 8 (noting presumption that a prosecutor exercises independent judgment in bringing criminal prosecution).) Plaintiff does not address this argument. (See Pl.'s Opp'n at 22-24.)

Defendants are correct that there is a presumption that a prosecutor exercises independent judgment in bringing a criminal case, thereby breaking any chain of causation between a police officer's conduct and the initiation of the proceeding. See Levy v. City of New York, 935 F. Supp. 2d 575, 588 (E.D.N.Y. 2013) (citing Douglas v. City of New York, 595 F. Supp. 2d 333, 342 (S.D.N.Y. 2009) (Chin, J.)); Alcantra v. City of New York, 646 F. Supp. 2d 449, 457 (S.D.N.Y. 2009). Therefore, "[t]o initiate a prosecution, a defendant must do more than report the crime or give testimony. He must 'play[] an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act.'" Manganiello v. City of New York, 612 F.3d 149, 163 (2d Cir. 2010) (second alteration in original) (quoting Rohman v. N.Y.C. Transit Auth., 215 F.3d 208, 217 (2d Cir. 2000)). A police officer may be found to have initiated a criminal proceeding by withholding material exculpatory evidence from the prosecutor, or knowingly creating false information that created the basis for the prosecution. See King v. City of New York, Nos. 12-CV-2344 (NGG) (RER), 13-CV-0037 (NGG) (RER), 2014 WL 4954621, at *4 (E.D.N.Y. Sept. 30, 2014); Myers v. Cnty. of Nassau, 825 F. Supp. 2d 359, 367 (E.D.N.Y. 2011); see also Manganiello, 612 F.3d at 163 ("A jury may permissibly find that a defendant initiated a prosecution where he 'fil[ed] the charges' or 'prepar[ed an] alleged false confession and forward[ed] it to prosecutors.'" (quoting Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 130 (2d Cir. 1997))).

Under these principles, Individual Defendants Donovan's and Miller's alleged conduct is insufficient to overcome the presumption that the D.A. acted with independent judgment.

18

Despite Plaintiff's somewhat conclusory allegation that Donovan acted with malice in recommending to Miller that Plaintiff be prosecuted,[11] nothing in the SAC suggests that Donovan had any interaction with the D.A.'s Office. Indeed, Plaintiff presents no facts to suggest that Miller's forwarding audio and video tapes to the D.A.'s Office, and even reviewing those tapes with A.D.A. Marshall, was more than a typical interaction in which a police officer presented evidence to the D.A.'s Office, and the D.A. independently decided whether to bring charges. No facts are alleged that would permit an inference that Miller pressured or "importun[ed]" A.D.A. Marshall to bring charges against Plaintiff. Manganiello, 612 F.3d at 163. Additionally, for the reasons explained above, Plaintiff has failed to plead sufficient facts to allege that the Defendants knowingly forwarded false evidence to the D.A.'s Office, or that they improperly withheld material exculpatory evidence; therefore, Plaintiff may not use these theories to plead that Defendants initiated his criminal case. See King, 2014 WL 4954621, at *4. Accordingly, Plaintiff has failed to allege initiation or continuation of his criminal proceeding.

     3.    Malice

Defendants also argue that Plaintiff has failed to sufficiently allege that they acted with "actual malice." (Defs.' Mem. at 10-11 ("Plaintiff's pro forma allegations are not sufficient under Twombly/Iqbal.").) "'[M]alice may be shown by proving that the prosecution complained of was undertaken from improper or wrongful motives, or in reckless disregard of the rights of the plaintiff.'" Manganiello, 612 F.3d at 163-64 (quoting Pinsky v. Duncan, 79 F.3d 306, 313

---

[11] As explained below, infra Part III.A.3, the court finds that allegations of malice as to Donovan are sufficiently pled insofar as the SAC sets forth allegations that Defendant Donovan was motivated by displeasure or anger at Plaintiff for his failure to downgrade Officer Schoolcraft's evaluation. (See SAC ¶¶ 12-26, 53-54.) However, Plaintiff has not pleaded facts permitting the inference that any of the Individual Defendants (including Donovan) knew or should have known that Plaintiff did not sign the arrest paperwork—in other words, that they knew that

(2d Cir. 1996)); see also Lowth v. Town of Cheektowaga, 82 F.3d 563, 573 (2d Cir. 1996) (malice may be proven by showing that the prosecution was commenced with "'a wrong or improper motive, something other than a desire to see the ends of justice served'" (quoting Nardelli v. Stamberg, 44 N.Y.2d 550, 502-03 (1978)), amended (May 21, 1996).

The court disagrees with Defendants only with respect to Individual Defendant Donovan.[12] Plaintiff alleges that Donovan asked him to "downgrade" Officer Schoolcraft's yearly evaluation, in order to discredit an officer who had collected evidence of "serious corruption" at the NYPD, and Plaintiff refused to do so. (SAC ¶¶ 12-26.) He alleges that Donovan's recommendation that Plaintiff be prosecuted for perjury was motivated by displeasure or anger at Plaintiff for his failure to downgrade Officer Schoolcraft's evaluation (a wrong or improper motive), and not by a desire to see justice done. (See id. ¶¶ 53-54.) However, Plaintiff has not pleaded facts to suggest that any of the other Individual Defendants acted with—or even had—a similar motivation. Accordingly, the SAC fails to adequately allege malice with respect to the other Individual Defendants.

**B.    False Arrest**

In Count II of the SAC, Plaintiff purports to set forth a § 1983 claim premised on a theory of false arrest. (See SAC ¶¶ 156-161.) In New York, false arrest is considered a type of false imprisonment. Singer v. Fulton Cnty. Sheriff, 63 F.3d 110, 118 (2d Cir. 1995). To state a claim for false arrest or false imprisonment, a plaintiff must plead: "'(1) the defendant intended to

---

probable cause did not exist for his prosecution.

[12] Nonetheless, Plaintiff's malicious prosecution claim against Individual Defendant Donovan is DISMISSED due to Plaintiff's failure to adequately allege two other required elements of his claim, with respect to all Individual Defendants: (1) the initiation or continuation of Plaintiff's criminal prosecution, and (2) a lack of probable cause. See supra Part III.A.1-2.

confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.'" Id. (alteration in original) (quoting Broughton v. State, 37 N.Y.2d 451, 456 (1975)). An arrest made on probable cause is privileged; the existence of probable cause is therefore a complete defense to a false arrest claim. See Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996); Broughton, 37 N.Y.2d at 458. "[P]robable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Weyant, 101 F.3d at 852.

Defendants argue that Plaintiff's grand jury indictment creates a presumption of probable cause with respect to his false arrest claim, as it does in connection with his claim of malicious prosecution. (Defs.' Mem. at 11.) However, as the Second Circuit has explained, "the New York Court of Appeals has expressly held that the presumption of probable cause arising from an indictment 'applies only in causes of action for malicious prosecution and is totally misplaced when applied in false [arrest] actions.'" Savino, 331 F.3d at 75 (alteration in original) (quoting Broughton, 37 N.Y.2d at 456); see also McClellan v. Smith, 439 F.3d 137, 145 (2d Cir. 2006) (finding district court to have erred in applying presumption of probable cause arising from grand jury indictment to false arrest claim); Rivas v. Suffolk Cnty., Nos. 04-4813-pr (L), 04-5198-pr (Con), 2008 WL 45406, at *1 (2d Cir. Jan. 3, 2008) (summary order) (same).

But Plaintiff's false arrest claim must be dismissed for a different reason. "Where, as here, an arrest is made pursuant to a warrant issued after a grand jury indictment, there can be no

claim for false arrest.[13]  Rather, the claim must be analyzed as one for [malicious prosecution]."

Sargent v. Cnty. of Nassau, No. 04-CV-4274 (DRH) (AKT), 2007 WL 778437, at *7 (E.D.N.Y.

Mar. 13, 2007) (citing Singer, 63 F.3d at 117; Wallace v. Kato, 549 U.S. 384, 389-90 (2007)

("[A] false imprisonment ends once the victim becomes held pursuant to [legal] process—when,

for example, he is bound over by a magistrate or arraigned on charges.  Thereafter, unlawful

detention forms part of the damages for the 'entirely distinct' tort of malicious prosecution,

which remedies detention accompanied, not by absence of legal process, but by wrongful

institution of legal process." (emphases in original) (citations omitted))); see also Townes v. City

of New York, 176 F.3d 138, 149 (2d Cir. 1998) ("Under common law, only a 'cause of action for

malicious prosecution . . . permits damages for confinement imposed pursuant to legal process.'

Therefore, a § 1983 plaintiff who does not allege the elements of a common law malicious

prosecution claim cannot recover [for such confinement]. . . . [T]he common law tort of false

arrest (or false imprisonment) allows plaintiffs to seek damages from 'the time of detention up

until issuance of process or arraignment, but not more . . . ." (citations omitted)); Coakley v.

Jaffe, 72 F. Supp. 2d 362, 364 (S.D.N.Y. 1999) (holding that arrest predicated on grand jury

indictment "bars a false arrest claim, requiring the plaintiff to proceed instead under a theory of

malicious prosecution" (citing Tunisia v. State, 434 N.Y.S.2d 846, 849 (Ct. Cl. 1978); Mills v.

Pappas, 570 N.Y.S.2d 726, 729 (App. Div. 1991))), aff'd, 234 F.3d 1261 (2d Cir. 2000)

(summary order).[14]  Accordingly, Plaintiff's false arrest claim is DISMISSED.

---

[13]  Although Plaintiff does not specify in his SAC that his post-indictment arrest occurred pursuant to an arrest warrant, he does not allege otherwise.  That the arrest occurred pursuant to legal process is the inference raised by the series of events alleged in in the SAC, which was prepared with the assistance of counsel.  (See SAC ¶¶ 72-87.)

[14]  Indeed, this very distinction provided the rationale of the New York Court of Appeals in holding that an indictment does not establish a presumption of probable cause in the context of a claim of false arrest.  See

## C. Abuse of Authority

It is less than clear what alleged constitutional or statutory violation Plaintiff seeks to redress in Count I of the SAC, which is termed "Abuse of Authority," and Plaintiff's Opposition does not shed any light on the matter. (See SAC at 18-19 (Count I); Pl.'s Opp'n at 27.) Courts have at times referred generally to § 1983 claims as claims of abuse of authority or abuse of governmental authority. See, e.g., Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 940 (1982); Monroe v. Pape, 365 U.S. 167, 172, 193 (1961), overruled on other grounds by Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978). It is without question that § 1983 "creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993) (citing Okla. City v. Tuttle, 471 U.S. 808, 816 (1985)). To the extent that Plaintiff's abuse of authority claim is an attempt to state a generalized § 1983 claim, without alleging a specific underlying violation of his federal rights, it fails for this reason.

It is possible that Plaintiff seeks to raise a § 1983 claim premised on an alleged violation of substantive due process. See Yu v. N.Y. State Unified Court Sys. Office of Court Admin., No. 11-CV-3226 (JMF), 2013 WL 3490780, at *7 (S.D.N.Y. July 12, 2013) (construing abuse of

---

Broughton, 37 N.Y.2d at 457-58. As that court explained:

> The distinction between false [arrest] and malicious prosecution in the area of arrest depends on whether or not the arrest was made pursuant to a warrant. . . . When an unlawful arrest has been effected by a warrant an appropriate form of action is malicious prosecution. This distinction is critical not only because it affects the allegations and proof but also because it brings the prima facie rule into operation. Essentially this rule recognizes the prima facie validity of actions where there has been a judicial evaluation. Accordingly, the Magistrate's consideration of the arrest warrant application will generate a presumption that the arrest was issued on probable cause. However, this reasoning is not applicable where the arrest is made without a warrant.

37 N.Y.2d at 457-58.

authority claim as alleged violation of substantive due process); Mahase v. City of New York, No. 96-CV-6105 (EHN), 2000 WL 263742, at *5 (E.D.N.Y. Jan. 5, 2000) (same). "An abuse of official authority may violate the substantive guarantees of the Due Process Clause when it is 'clearly unjustified by any legitimate objective of law enforcement,' such that the behavior 'shocks the conscience' or runs counter to the 'decencies of civilized conduct.'" Mahase, 2000 WL 263742, at *5 (quoting Cnty. of Sacramento v. Lewis, 523 U.S. 833, 840 (1998); Rochin v. California, 342 U.S. 165, 172-73 (1952)); see also Natale v. Town of Ridgefield, 170 F.3d 258, 262-63 (2d Cir. 1999) ("For state action to be taken in violation of the requirements of substantive due process, the denial must have occurred under circumstances warranting the labels 'arbitrary' and 'outrageous.' . . . Substantive due process standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority."). However, "[w]here another provision of the Constitution provides an explicit textual source of constitutional protection, a court must assess a plaintiff's claims under that explicit provision and not the more generalized notion of substantive due process." Southerland v. City of New York, 680 F.3d 127, 142-43 (2d Cir. 2012) (internal quotation marks and citation omitted); see also Velez v. Levy, 401 F.3d 75, 94 (2d Cir. 2005); Zahrey v. City of New York, No. 98-CV-4546 (DCP) (JCF), 2009 WL 1024261, at *9 (S.D.N.Y. Apr. 15, 2009); Mahase, 2000 WL 263742, at *5.

Thus, even if construed as a claim premised on a violation of substantive due process, Plaintiff's Count I must fail. To the extent that Plaintiff seeks to raise a substantive due process claim premised on the events surrounding his criminal prosecution and related arrest, the court must instead assess his claim under the Fourth Amendment (and has done so above). See Singer

24

v. Fulton Cnty. Sheriff, 63 F.3d 110, 115-16 & n.3 (2d Cir. 1995) (noting that the Fourth Amendment, not substantive due process, provides the source for a § 1983 claim premised on a person's wrongful arrest or prosecution). To the extent that Plaintiff seeks to attack other actions taken by the Individual Defendants—for example, the implementation of disciplinary charges and the Department Trial—Plaintiff fails to allege any truly outrageous behavior that would rise to the level of a violation of his right to substantive due process. In a conclusory manner, Plaintiff alleges that Defendants "acted in an outrageous and systematic pattern of bad faith and cover-up" (SAC ¶ 154); however, no well-pleaded factual allegations support this contention. Leaving aside any allegations surrounding his prosecution, as the court must, the facts principally alleged in the SAC include: (1) a series of alterations in Plaintiff's employment status, none of which appear "outrageous" in light of the status of the criminal proceedings at the relevant times (see id. ¶¶ 64-65, 81-82, 89, 136, 145); (2) a leak by an unknown individual at the D.A.'s Office or the NYPD to the press regarding Plaintiff's sealed indictment, Plaintiff's being made to perform a "perp walk" on the way to his arraignment, and the publication of the news of his arrest in the media (id. ¶¶ 77-80, 86-88);[15] and (3) the imposition of disciplinary charges mirroring his criminal charges, the subsequent dropping of those charges after the dismissal of his criminal case, and the service of a single amended disciplinary charge for "failing to follow the turnover arrest procedure," for which Plaintiff was ultimately found not guilty after a Department Trial (id. ¶¶ 90-93, 115-119, 135, 147, 149). Even if any of these factual allegations were construed to state a deprivation of a property or liberty interest, none of the alleged

---

[15] Plaintiff does not allege that any of the Individual Defendants were the source of the leak of the sealed indictment, or that any Individual Defendants were responsible for the media's publication of the news of Plaintiff's arrest.

25

governmental conduct "shocks the conscience" or "runs counter to the decencies of civilized conduct." Mahase, 2000 WL 263742, at *5. Plaintiff's abuse of authority claim is therefore DISMISED.

### D. Municipal Liability

A municipality cannot be held liable pursuant to 42 U.S.C. § 1983 under a theory of respondeat superior. Monell v. Dep't of Social Servs., 436 U.S. 658, 692 (1978). To the contrary, a municipality may only be held liable for the constitutional violations of its employees when such violations result from the municipality's official policy. Id. at 693. Such a policy may be (1) an express policy, (2) "a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a "custom or usage" with the force of law,'" City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 167-68 (1970)), or (3) a decision by a person with "final policymaking authority," see Praprotnik, 485 U.S. at 123; Pembaur v. City of Cincinnati, 475 U.S. 469 (1986). The SAC asserts four theories of municipal liability: an express policy, and three practices (failure to train, failure to supervise, and improper discipline). (See SAC ¶¶ 168-188 (Counts IV-VII).)

However, "Monell does not provide a separate cause of action for the failure by the government to train[, supervise, or discipline] its employees; it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006). Accordingly, as the court has found that Plaintiff's underlying § 1983 claims must be dismissed, it need not reach the question of whether Plaintiff has

adequately pleaded a <u>Monell</u> claim. <u>See id.</u> ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under <u>Monell</u> was entirely correct."); <u>see also</u> <u>Johnson v. City of New York</u>, 551 F. App'x 14 (2d Cir. 2014) (summary order) ("Because [plaintiff] has not alleged a valid underlying constitutional deprivation, his claim against New York City pursuant to <u>Monell</u> . . . must also fail." (citing <u>City of Los Angeles v. Heller</u>, 475 U.S. 796, 799 (1986))); <u>Fotopolous v. Bd. of Fire Comm'rs of Hicksville Fire Dist.</u>, 11 F. Supp. 3d 348, 373 (E.D.N.Y. 2014) ("The dismissal of Plaintiff's underlying claim for First Amendment retaliation requires dismissal of Plaintiff's municipal liability claim, as Defendants cannot be liable where there is no underlying constitutional violation."). Accordingly, all claims against the City are DISMISSED.

### E. Qualified Immunity and Personal Involvement

Defendants also argue that all Individual Defendants are entitled to qualified immunity, and that Plaintiff has failed to sufficiently allege personal involvement in any of the alleged constitutional violations by Individual Defendants Campisi, Strebel, and Facey. (<u>See</u> Defs.' Mem. at 20-24.) Notably, Plaintiff has not presented any cases or even attempted to set forth a colorable argument in opposition. (<u>See</u> Pl.'s Opp'n at 27-28.) As the court has found that Plaintiff's SAC must be dismissed in its entirety for failure to state any constitutional violation, it need not reach these issues. <u>See</u> <u>Walczyk v. Rio</u>, 496 F.3d 139, 154 (2d Cir. 2007) (citing <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001)).

## IV. DISMISSAL WITH PREJUDICE

Plaintiff, who is represented by counsel, has already twice amended his Complaint. Plaintiff also failed to even address many—if not most—of Defendants' arguments in his brief in

opposition to the instant motion. (See Pl.'s Opp'n at 25 (collateral estoppel), 27 (abuse of authority), 27 (personal involvement), 28 (qualified immunity).) As explained above, Plaintiff fails to state a claim for malicious prosecution because (1) he has failed to plead facts alleging initiation of his criminal prosecution by any of the Individuals Defendants; and (2) he is unable to overcome the presumption of probable cause created by his grand jury indictment, due to both (a) his failure to plead facts establishing that the indictment was procured by bad faith police conduct and (b) collateral estoppel as to that issue. That Plaintiff's arrest occurred pursuant to a grand jury indictment is also fatal to his false arrest claim; and to the extent that he attempts to raise a substantive due process claim that is separate and apart from his prosecution and arrest, he fails to allege any conduct that "shocks the conscience" or "runs counter to the decencies of civilized conduct." Accordingly, justice would not be served by permitting further amendment of the Complaint, see Fed. R. Civ. P. 15(a)(2), and the SAC is therefore DISMISSED WITH PREJUDICE. Cf. Lovanyak v. Cogdell, 955 F. Supp. 172, 174 (E.D.N.Y. 1996) (dismissing without prejudice on grounds that a pro se plaintiff should be given an opportunity to amend).

## V.     CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is GRANTED in full; Plaintiff's Second Amended Complaint is DISMISSED with prejudice. The Clerk of Court is respectfully directed to enter judgment and close the case.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
      March 17, 2015

NICHOLAS G. GARAUFIS
United States District Judge